BUSH *v.* MATTOX, administratrix.

1. Where a lessee of convicts, who has a right to sublet them to other persons, employs another to assist him in procuring some one to sublet them, and agrees in writing to pay to the person so employed, for his services, all excess over $14 per month for each convict sublet, and, with the assistance of the intermediary, the original lessee makes a contract subletting the convicts at $16 per month, and subsequently, without the knowledge of the intermediary, releases the sublessee and voluntarily reduces the amount from $16 to $14, the intermediary is entitled to recover on his contract.
2. The declaration in the present case, properly construed, constitutes a suit upon the contract for damages for the failure to enforce the sublease as made, and collect the full amount due thereon, and turn over to the plaintiff his share of the proceeds.

Submitted May 1,— Decided July 23, 1902.

Action on contract. Before Judge Holden. Elbert superior court. January 21, 1902.

*W. D. Tutt & Son,* for plaintiff.
*Joseph N. Worley,* for defendant.

SIMMONS, C. J. The State of Georgia leased fifty convicts to Mattox, who wished to sublet them. He went to Miller county, where Dr. Bush resided, and asked Bush to assist him in subletting these convicts, telling Bush that he wished to get $14 per month for each of them, and agreeing in writing to pay Bush " all above fourteen dollars per month that is paid Mattox for said fifty convicts," the consideration being that Bush should assist him in hiring out the convicts, and should keep a general watch over them and the financial standing of the person to whom they were hired. Sharpe was the owner of a turpentine business, and desired to hire some convicts. Bush introduced him to Mattox, and he agreed to hire the convicts, provided his attorney advised him that the contract would be legal. The price of $16 per month was agreed upon, Bush taking part in the conversation which led up to this agreement. Then Bush, Mattox, and Sharpe went to Bainbridge, in Decatur county, where Sharpe was informed by his counsel that the contract would be legal, but would have to be approved by the State prison commission. Sharpe and Mattox then entered into a written contract whereby Sharpe agreed to pay Mattox $16 per capita per month for the hire of the fifty convicts. Sharpe appointed one of his attorneys at law, Nussbaum, his attorney in fact to accompany

Mattox to Atlanta to get the prison commission to approve the contract. For some reason the original contract was not presented to the commission. The evidence shows that the chairman of the commission had, in a conversation with the parties, remarked that the commission did not favor putting convicts on turpentine farms, on account of the increase in the expense for guards. Nussbaum suggested that Sharpe would pay the increased expense, and the chairman then said that the commission would probably approve the contract. A new contract was entered into between Mattox and Nussbaum, the latter acting for Sharpe, whereby the price to be paid was reduced to $14.50. The original contract was never presented to the commission, but this new contract was presented, and received the approval of the commission. Subsequently Mattox voluntarily released Sharpe from a portion of this obligation, by reducing the agreed price from $14.50 to $14. All of this was done without the consent or knowledge of Bush. Under the contract between Bush and Mattox, Bush was not only to assist in hiring out the convicts but was to keep watch over them and keep informed as to the financial standing and credit of the sublessee. The evidence shows that Bush did this. It also appears that Sharpe paid Mattox $14 per month for each convict. When the payment became due, Bush demanded of Mattox that the latter pay him two dollars per capita per month, claiming that this was the excess over $14. Mattox refused to pay him anything, replying that the prison commission had refused to approve the contract at $16, and that he had to reduce it. The evidence shows that this was untrue. The chairman of the commission testified that the commission was not concerned in the amount paid, and, in his opinion, would as readily have approved the contract for $16 as they did the one for $14.50; that the concern of the commission was to see that the increased cost for guards did not fall upon the State. Bush brought suit against Mattox for the amount he claimed to be due him, predicating his right on the contract between him and Mattox. The defendant filed an answer which, on account of his death before the trial, was in part unsupported by evidence. The defendant below seems to have contended that under the contract he was to pay Bush only such amount in excess of $14 per capita per month as was actually *paid* him, and that, inasmuch as he had collected but $14 he was not liable to Bush in any sum whatever. The court

directed a verdict for the defendant. Bush moved for a new trial, and, when his motion was overruled, excepted.

1. Under the facts above stated, was Mattox liable to Bush in any amount upon the contract? If he was, then the court erred in directing a verdict for the defendant. We think that the direction of the verdict was error. Mattox went to Bush and requested his assistance in hiring out his fifty convicts, agreeing to pay him all over $14 per capita per month he should receive for them. Bush introduced Mattox to Sharpe, who hired the convicts at an agreed price of $16. Bush not only introduced the parties, but took part in the conversation leading up to the fixing of the price, and then went with them to another county to ascertain whether the contract would be legal. He also appears to have been present when the written contract was entered into between Mattox and Sharpe. So far as appears from the record, Sharpe is perfectly solvent, and Mattox could have collected from him the full amount stipulated for in the contract. It is true that this contract had, under the law, to be approved by the prison commission, but the testimony tends to show that this would have been as readily approved as the contract which was presented to the commission for approval. Bush brought the parties together and by his services assisted Mattox in making the contract with Sharpe. His services were in the nature of the services of a broker; and it is well settled that where the owner of real estate puts his property in the hands of a real estate broker for sale, and the broker brings the owner and a purchaser together, and by reason of this a contract of sale is made, the broker is entitled to his compensation. *Gresham* v. *Connally*, 114 *Ga.* 906. The contract between Mattox and Sharpe appears to have been legal and binding. If Mattox voluntarily reduced the contract price from $16 to $14 without the consent of Bush, he is liable to the latter. He had agreed to pay Bush all over $14 that was paid him, and when Bush assisted him to make a contract for $16 he had no right to reduce it. But it was said that as he did reduce it, and as the contract gave Bush only such excess as Mattox actually collected, Bush can not recover on the contract. We think that this is not true. In the first place, we think that this is not a fair construction of the contract. While a strict and literal construction might lead to such a result, we think the clear meaning of the contract was that Bush should receive such excess

as Mattox contracted for and was able to collect or could by due diligence have collected.    Mattox could have collected the full amount of $16, with possibly some reduction on account of Sharpe's having to assume part of the cost of guarding the convicts.    Certainly he could have collected more than $14; and if he voluntarily reduced the price to that amount, it was his loss and not that of Bush.    Mattox had no right voluntarily to give away Bush's interest in the convict hire.    Being entitled to collect more than $14, when he received that amount in full satisfaction of what he could have collected, it was the same, relatively to Bush, as though Mattox had actually received the full amount.    If Mattox had so desired, he could have released Sharpe althogether from paying for the convicts, but he could not thereby release himself from his obligation to Bush.    He could give away what was his, but not what belonged to Bush.    When he released Sharpe from paying the excess over $14, and then refused to pay Bush his demands, he committed a breach of the contract.    Conceding, for the sake of the argument, that the prison commission would not have approved the original contract, and that Mattox was entitled to collect from Sharpe no more than the amount stipulated in the contract which was approved, still the direction of the verdict was erroneous; for the commission did approve a contract for more than $14, and Bush is entitled to the excess.

2. In the court below some question arose as to the nature of the present suit.    The plaintiff claimed that his declaration sounded in tort.    The judge held to the contrary.    After a careful reading of the declaration, we think the judge was correct.    The allegations of the declaration make the suit one on a contract.

*Judgment reversed.    All the Justices concurring, except Lewis, J., absent.*